**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| S&D TRADING ACADEMY, LLC, and S&D GLOBAL TRADING, INC., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. G-06-CV-739 |
| AAFIS, INC., HELEN SHIH, and MARTY SHIH, | § § § | |
| Defendants. | § § | |

**ORDER DENYING DEFENDANT AAFIS, INC.'S MOTIONS TO DISMISS FOR _FORUM NON CONVENIENS_, LACK OF PERSONAL JURISDICTION, INSUFFICIENT SERVICE OF PROCESS, AND IMPROPER VENUE**

Plaintiffs S&D Trading Academy, LLC, and S&D Global Trading, Inc. (collectively, "S&D")

bring this action against Defendants AAFIS, Inc. ("AAFIS"), Helen Shih, and Marty Shih for an

alleged breach of contract and misappropriation of trade secrets.  AAFIS filed a Motion to Dismiss

for Lack of Personal Jurisdiction, Insufficient Service of Process, and Improper Venue. AAFIS also

filed a Motion to Dismiss for _Forum non Conveniens_.  S&D responded to both Motions, and AAFIS

filed Replies to both Responses.  For the reasons enunciated below, AAFIS's Motions are both

**DENIED**.

**I.  Background**

Helen Shih is the majority shareholder, principal officer, and a director of AAFIS, which is

1

a Nevada corporation with its principal place of business in Los Angeles, California.[1]  According to

Helen Shih, Mitch Cariega went to Texas in 2004 on behalf of AAFIS to "find a teacher" to "grow

the trading business." Shih Dep. 187–88.  During this visit, Cariega allegedly approached Donald J.

Cleary, the principal of S&D Trading Academy, LLC and a director of S&D Global Trading, Inc., and

expressed interest in learning how to day trade.  In January, 2005, Cariega again visited Cleary.  They

met in Cleary's home in Spring, Texas.  Cariega explained that he was working for a company that

had day trading operations in the People's Republic of China ("China") and that he needed somebody

to train the company's day traders ("Chinese day traders"), who were located in China.  Cariega then

proposed that the two of them visit the company.  Thereafter, Cariega, Cleary, and Cleary's business

associate, Robert Compher, traveled to China to visit said company.  Cariega allegedly made an offer

to Cleary and Compher during this trip, which Cleary claims was refused.

In April, 2005,[2] Cariega again met with Cleary at Cleary's Spring residence.  Cleary claims

that an agreement was reached during this meeting whereby Compher and Cleary would teach the

Chinese day traders, who Cleary believed to be employees of AAFIS,[3] how to day trade in exchange

for compensation to be paid by AAFIS.  Compher and Cleary traveled to China on some occasions

to provide said training, and, on other occasions, the Chinese day traders traveled to Houston to

---

[1]Defendant Marty Shih is Helen Shih's brother.  Helen Shih claims that Marty Shih is not an officer, director, or shareholder of AAFIS. Shih Decl. ¶ 2.

[2]AAFIS's Response and Cleary's Declaration both claim this meeting occurred in April, 2004.  However, given the sequence with which they present the information, the Court assumes that the date should be April, 2005.

[3]AAFIS claims that the Chinese day traders are employees of the Asian American Association Shen Yang ("ASY"), not AAFIS.  Helen Shih is the majority shareholder of ASY. Shih Decl. ¶ 5.  According to Helen Shih, AAFIS pays ASY a fee for the use of its employees to help trade on AAFIS's account. *Id.* ¶ 8.

receive training.  AAFIS, through Cariega, rented a three-bedroom apartment in Houston, which was used by the Chinese day traders during their Houston training.[4]

The first group of traders arrived in Houston in June, 2005 and stayed for twelve weeks.  As part of their extensive, hands-on training, they performed actual day trades for AAFIS's account. Cariega allegedly visited Houston during this time period.  In November, 2005, Cleary alleges that Cariega visited Houston to renegotiate the terms of the training agreement.  The renegotiation meetings allegedly took place at a Starbucks in Houston, and Cariega, Cleary, and Compher alledgedly reached a renegotiated agreement.  Then, S&D claims that a second group of Chinese day traders arrived in Houston and began their training.

In October, 2006, AAFIS presented S&D with a draft written contract that S&D claims contained provisions that were not a part of the oral agreements, and S&D refused to sign.  AAFIS claims that the written agreement contained an agreement not to compete in China, which AAFIS allegedly believed was part of the original and renegotiated oral agreements.  When S&D refused to sign the written agreement, AAFIS terminated the oral agreement.

S&D claims that it fully or substantially performed its duties under the oral agreement and that AAFIS breached the contract prior to fully compensating S&D.  S&D also claims that AAFIS used or disclosed trade secrets and proprietary information in breach of its confidential relationship with S&D.  Finally, S&D claims that AAFIS is a sham corporate structure and that Helen Shih and Marty

---

[4]AAFIS admits that it paid the rent for the apartment, but it claims that ASY has or will reimburse it for the payments.  AAFIS also claims that Cariega leased the apartment on his own behalf.  However, AAFIS's name is on the lease as the contracting party, and Helen Shih admits that Cariega had power to do whatever he needed to do to grow the trading business. *See* Pls.' Resp. to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction Ex. 3 (a Houston Apartment Association lease between AAFIS and Legacy Pines Apartments at 11100 Louetta Road).

Shih are liable for AAFIS's breach under an alter ego theory.

AAFIS has now moved to dismiss this case because it contends that (1) it was improperly served; (2) this Court may not exercise *in personam* jurisdiction over it; (3) this venue is improper; and (4) China is a more favorable forum.

## I. Personal Jurisdiction

*A. Legal Standard*

Generally, the plaintiff bears the burden of establishing the Court's jurisdiction over a nonresident defendant. *See Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). However, it is sufficient for the plaintiff to make a *prima facie* showing of jurisdiction, and any conflicts between affidavits are resolved in favor of the plaintiff. *See Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990); *Guyton v. Pronav Ship Mgmt., Inc.*, 139 F. Supp. 2d 815, 818 (S.D. Tex. 2001). A nonresident defendant is subject to personal jurisdiction in this District if: (1) the defendant is amenable to service of process under Texas's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant is consistent with due process. *See Stripling v. Jordan Prod. Co., L.L.C.*, 234 F.3d 863, 869 (5th Cir. 2000); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1067 (5th Cir. 1992). The Texas long-arm statute grants jurisdiction over a nonresident defendant "doing business" in Texas. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997). The phrase "doing business" has been interpreted to reach as far as the United States Constitution permits, and therefore the jurisdictional inquiry under the Texas long-arm statute collapses into a single due process inquiry. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993); *Williams v. Castro*, 21 F. Supp. 2d 691, 692 (S.D. Tex. 1998); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–57 (Tex. 1990). Whether the exercise of personal jurisdiction over

4

a defendant is consistent with the Due Process Clause of the United States Constitution likewise requires a two-pronged inquiry.  First, the Court must conclude that the defendant has "minimum contacts" with the forum state. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945).  Second, the Court must determine whether requiring the defendant to litigate in this forum offends "traditional notions of fair play and substantial justice." *Id*; *see also Wilson*, 20 F.3d at 647; *Ruston Gas Turbines*, 9 F.3d at 418.

   *1. Minimum Contacts*

   The "minimum contacts" prong can be satisfied by finding either specific or general jurisdiction over a defendant. *See Wilson*, 20 F.3d at 647.  A defendant's limited contact with the forum state may support specific jurisdiction if such contact gives rise to the cause of action. *See Ruston Gas Turbines*, 9 F.3d at 419 ("A single act by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted.").

   A defendant's contacts unrelated to the cause of action may confer general jurisdiction, but these contacts must be both "continuous and systematic" and "substantial." *Wilson*, 20 F.3d at 647, 650–51.  A defendant's contacts with the forum state may be deemed continuous, systematic, and substantial if the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183, 85 L. Ed. 2d 528 (1985) (citing *Hanson v.Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239–40, 2 L. Ed. 2d 1283 (1958)).  Such contacts need not exhibit a physical presence within the state, but they should be "such that [the defendant] should reasonably anticipate being haled into court there." *Id.* at 474–76, 105 S. Ct. at 2183–84 (citing

5

*World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 490 (1980)).

### 2.  Fair Play and Substantial Justice

The second prong of the due process inquiry requires the Court to determine whether the exercise of jurisdiction would violate "'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316, 66 S. Ct. at 158 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 343, 85 L. Ed. 278 (1940)).  However, "where a defendant who purposely has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477, 105 S. Ct. at 2184.  The Court may consider factors such as "'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering substantive social policies.'" *Id.* (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S. Ct. at 564).  Occasionally, "these factors . . . serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Id.*

### B.  Analysis

S&D claims that the Court may exercise either specific or general *in personam* jurisdiction over AAFIS because this claim arose out of one of AAFIS's allegedly continuous and systematic contacts with Texas.  Conversely, AAFIS claims that its contacts with Texas are extremely limited and that none of them gave rise to this claim.

### 1.  Minimum Contacts: Breach of Contract Claim

6

S&D claims that it entered into an oral agreement with AAFIS in Texas, that most of the services under said contract were performed in Texas, and that most of the negotiation associated with the agreement occurred in Texas. AAFIS correctly claims that merely contracting with a Texas resident is not enough to establish specific personal jurisdiction through that contract, even if the contract was partially performed in Texas. In order to support specific jurisdiction, the contract must create a "'substantial connection' with the forum." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 n.12 (Tex. 1991) (quoting *Burger King*, 471 U.S. at 475 n.18, 105 S. Ct. at 2184, n.18). "That connection may exist when there is a long-term agreement, involving many contacts over a period of time." *Meader v. IRA Resources, Inc.*, 178 S.W.3d 338, 347–48 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957)). In order to determine if the contract represents a substantial enough connection with Texas to constitute "purposeful availment," the Court considers the following factors: (1) prior negotiations; (2) future consequences; (3) the terms of the contract; and (4) the Parties' actual course of dealing. *See Burger King*, 471 U.S. at 479, 105 S. Ct. at 2185.

*a. Negotiations.* S&D contends that most of the negotiations for the oral contract occurred in Texas, and AAFIS conversely claims that most of the negotiations occurred in China. AAFIS further claims that Cariega conducted these negotiations, and, contrary to S&D's claim that Cariega was AAFIS's agent, AAFIS claims Cariega was an independent contractor. "[T]he actions of an independent contractor by themselves are not sufficient to subject a non-resident corporation to the jurisdiction of the forum state." *Coleman v. Klöckner & Co. AG*, 180 S.W.3d 577, 588 (Tex. App.—Houston [14th dist.] 2005, no pet.) (citing *O'Quinn v. World Indus. Constructors, Inc.*, 874 F. Supp. 143, 145 (E.D. Tex.), *aff'd*, 68 F.3d 471 (5th Cir. 1995)). If AAFIS did not direct the

7

specific "means and details of [Cariega's] work," then he was presumably an independent contractor. *Id.* According to Helen Shih, Cariega was empowered to do whatever he needed to secure a trainer, and she did not direct him nor control his execution of his responsibilities. Shih Decl. ¶ 12.   S&D carries the burden of showing the agency relationship and has not, at this point, carried that burden. *See Coleman*, 180 S.W.3d at 588 ("[A]gency will not be presumed, and the party asserting the relationship has the burden of proving it.").   Thus, for the sake of the instant Motion, the Court presumes that Cariega was an independent contractor and thus cannot assign much significance to the fact that Cariega purposely sought out Texas corporations to perform the training for AAFIS.

However, AAFIS does not dispute that it reached some kind of an agreement with S&D,[5] and Cleary claims that the actual agreement was reached *in Texas* after he, Compher, and Cariega returned from China.  The Record indicates that Helen Shih was aware that Cariega was dealing with a trainer from Texas , and she gave her approval to go forth with the transaction.  AAFIS does not appear to dispute the location in which the actual agreement was reached, and, even if it did, the Court would be bound to resolve any conflicts between affidavits in favor of S&D.  Thus, the fact that Cariega, on behalf of AAFIS and with the power to do so, ultimately reached an agreement with two Texas corporations in Texas lends substantial credence to the notion that the contract represents a substantial connection to Texas.

*b. Future Consequences.*  AAFIS claims that, even though it was aware that both S&D entities were Texas corporations, it did not anticipate that the training would take place in Texas.  If the contract performance occurring in Texas was "entirely incidental and immaterial to the purpose of

---

[5]AAFIS paid S&D for training the Chinese day traders that it claims are employed by ASY. Shih Decl. ¶ 18.

the contract and [was] not instigated by [AAFIS]," then such performance cannot alone indicate that the contract in question represents a significant connection to Texas. *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.*, 994 S.W.2d 684, 692 (Tex. App.—San Antonio, 1998, no pet.), *abrogated on other grounds*, *BMC Software Belgium, N.V. v. Merchand*, 83 S.W.3d 789 (Tex. 2002). However, the Court is not convinced that the location in which the training occurred was "fortuitous or inconsequential," as AAFIS suggests. Mot. to Dismiss for Lack of Personal Jurisdiction at 6. Certainly, the "training could have occurred anywhere,"*id.* at 6–7, but Cariega traveled to Texas in search of trainers, and Helen Shih—and thus AAFIS—was aware that Cariega was doing so, *see* Shih Dep. 64 (testifying that Cariega would let her know that he was traveling to Texas and that he told her he would be discussing contract terms with Cleary and Compher while he was there). AAFIS ultimately contracted with Texas entities to provide the training it sought. It does not take a giant leap of logic to conclude that AAFIS contemplated that at least some of the training would occur in Texas—particularly given the fact that Cariega rented the Houston apartment *on the day that the agreement was allegedly reached. See* Shih Decl. ¶ 14(c) (noting that Cariega rented an apartment "for ASY traders who may come to the United States as part of their training by Mr. Cleary" on April 4, 2005); Cleary Decl. ¶ 5 (noting that he reached an agreement with Cariega at his home in Spring during the April visit); Pls.' Resp. to Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction Ex. 3 (lease listing AAFIS as the contracting party and including a Notary Public seal that states that Cariega signed the lease in his authorized capacity). Thus, the Court finds that AAFIS should have at least contemplated that contracting with S&D for the training services would result in a substantial and ongoing connection with Texas.

     *c. Terms of the Contract and Actual Course of Dealings.* Because the contract in question

is an oral contract, it is impossible to determine at this point what the exact terms were.  Thus, the Court will focus on the actual course of dealings.  AAFIS concedes that it had discussions with Cleary and Compher via telephone and fax, or in China, after the agreement was allegedly reached.  It is undisputed that the Chinese day traders came to Houston in June, 2005 and received extensive training.  Also undisputed is that Cariega visited Houston in June, 2005 to "check on the ASY traders," and in August, 2005 to discuss "possible contract terms." Shih Decl. ¶ 14(d)–14(e); *see also* Cleary Decl. ¶ 10 (noting that Cariega spent at least two days in Houston).  Cleary claims that Cariega also traveled to Houston in November, 2005 with a second group of Chinese day traders and that Cariega renegotiated the terms of the oral agreement during this trip.  These contacts with Texas clearly demonstrate that the actual course of AAFIS's dealings regarding this contract represent a substantial and ongoing connection with Texas.

In sum, the contract giving rise to this action and the actual course of dealings created a substantial connection between AAFIS and Texas.  The agreement was at least partially negotiated in Texas, was allegedly entered into in Texas, and was at least partially (and significantly) performed in Texas.  Furthermore, since AAFIS's independent contractor, with the knowledge and approval of AAFIS, sought out a training company that it knew was based in Texas and even rented an apartment in Texas for the individuals whom it desired to be trained, it cannot realistically dispute that it knew that extensive training would take place in Texas and that entering into the agreement would create a significant connection with Texas.  Thus, S&D's breach of contract claim "arise[s] out of or relate[s] to" AAFIS's contacts with Texas, and, as long as the exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice, the Court may exercise specific jurisdiction over AAFIS regarding that claim.

## 2. Minimum Contacts: Misappropriation of Trade Secrets Claim

It would seem that S&D's misappropriation of trade secrets claim is so intertwined with its breach of contract claim that due process would not be offended if the Court were to exercise specific jurisdiction over both claims after finding that the breach of contract claim arose out of AAFIS's contacts with Texas.  However, in a relatively recent opinion, the Fifth Circuit held that, "if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006).  Since the trade secrets were allegedly misappropriated in the course of performance of the contract, intuitively, both claims arise from the same contact or series of contacts.  However, in an abundance of caution, the Court will discuss why it may assert specific jurisdiction over AAFIS for the misappropriation of trade secrets claim.[6]

While S&D's trade secrets were allegedly misappropriated in China, the first step of the alleged misappropriation—learning the trade secrets—occurred in Texas.  The Chinese day traders came to Texas to learn S&D's day trading method.  They took this intellectual property back to China with them and allegedly misappropriated it there.  If they had not obtained the intellectual property in Texas, they would not have been able to misappropriate it. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (holding that it could exercise personal jurisdiction over a nonresident

---

[6]In *Seiferth*, the plaintiff brought claims against the defendant for defective design, failure to warn, negligence, and negligence *per se. Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006).  The Fifth Circuit found that the failure to warn, negligence, and negligence *per se* claims arose out of the defendant's contacts with the forum, but that the defective design claim did not. *See id.*  The Fifth Circuit determined that requiring the plaintiff to establish specific jurisdiction over each claim when the claims arise out of multiple contacts with a forum is a result that "flows logically from the distinction between general and specific jurisdiction." *Id.* Accordingly, the Fifth Circuit affirmed the district court's decision to dismiss the defective design claim for lack of personal jurisdiction. *See id.* at 275.

defendant who "came to [the forum state] allegedly to receive the property that they eventually misappropriated and used to injure [the plaintiff]."). Thus, the alleged misappropriation arose from AAFIS's contact with this state.[7]  Accordingly, the Court may exercise specific jurisdiction over AAFIS for both claims asserted against it as long as such an exercise does not offend traditional notions of fair play and substantial justice.

### 3.  *Traditional Notions of Fair Play and Substantial Justice*

The second prong of the due process inquiry is whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.  The Court will consider the following factors: (1) the burden on AAFIS; (2) Texas's interest in adjudicating the dispute; (3) Plaintiffs' interest in obtaining convenient and effective relief; (4) efficiency; and (5) the furtherance of substantive social policies. *See World-Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S. Ct. at 564.

AAFIS claims that it will face a substantial burden if this case is heard in Texas because (1) Defendants live in California; (2) the (now Texas trained) Chinese day traders live in China; and (3) the trading records of the Chinese day traders are located in China.  Regarding Defendants' residence, the Court finds it interesting (and disingenuous) that AAFIS finds it more burdensome to travel to Texas for trial than to travel to China.  AAFIS's argument regarding the Chinese day traders is somewhat more convincing.  AAFIS claims that requiring them to travel to the U.S. to testify will

---

[7]AAFIS may claim that the training that occurred in Houston cannot be considered to be purposely directed at Texas because Cleary, not AAFIS, chose the training location.  However, AAFIS chose to contract with a Texas company, and the Chinese day traders did not just magically appear in Houston.  The Record indicates that Cariega and AAFIS both knew that the Chinese day traders were in Houston—Cariega visited Houston while they were being trained, and AAFIS paid the rent for the apartment in which the Chinese day traders were staying.  So, even though S&D may have initially chosen the training location, AAFIS unquestionably ratified that decision and performed accordingly.

present an excessive financial and logistical burden and that the traders' testimony is essential because one of S&D's claims involves the misuse of trade secrets. But, the Court notes that said day traders have traveled to Texas before, indeed receiving their training here. Also, the Court does not foresee that the testimony of more than one or two Chinese day traders will be necessary; otherwise, the testimony would likely be redundant or cumulative. This Court strives to avoid unnecessary expense or inconvenience to parties or witnesses by vigorously exercising its authority under Fed. R. Evid. 403 and 611(a) to ensure that each witness's testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum." *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F. Supp. 1392, 1397 (S.D. Tex. 1992). Furthermore, it is likely that such testimony may be adequately secured by deposition, which of course can be obtained and preserved anywhere. Finally, AAFIS's argument regarding the training records is also unconvincing because (1) substantial training occurred in Houston, so there are likely records here as well as in China; (2) Defendants have not given the Court any indication that the records located in China are so voluminous as to cause AAFIS to incur substantial cost in transporting them to this Court; and (3) most documents can now be "transported" electronically.

AAFIS next argues that Texas's interest in this case is tenuous. It claims that the contract was "primarily negotiated in China and required that part of the performance occur in China." Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction 11. This argument ignores the fact that the contract was also partially negotiated, allegedly formed, and partially performed in *Texas*. AAFIS claims that any Texas connection should be disregarded because the performance that took place in Texas was due solely to the unilateral activity of Cleary, but, in determining the extent of Texas's interest in the matter, who decided to negotiate, form, and perform in Texas is almost inconsequential. Texas

citizens undisputably have an interest in a breach of contract action when the performance of said contract involved training that occurred in this state and was conducted by two Texas corporations.[8]

Next, AAFIS claims that any interest S&D has in litigating in this forum should be disregarded because S&D should have anticipated being required to litigate in China when it entered into this contract. Whether S&D anticipated that is may be haled into court in China does bear weight in the determination of the extent of its interest in having this controversy resolved in the forum it chose. S&D did not chose a random forum when it filed this lawsuit. Instead, it chose the Southern District of Texas, which is the District in which it resides. Obviously, it will be more convenient for S&D to have the trial in its home district rather than in a foreign country, and this interest weighs into the fair play and substantial justice determination.

Furthermore, the Court finds this whole case to be a troubling and likely burgeoning by-product of globalization. Given the enormous trade imbalance between the United States and various other countries, including China, U.S. businesses must become engaged in international markets in order to survive. This is particularly true in a sophisticated and international arena such as day trading. Unfortunately, U.S. workers on this international stage are dismayingly sometimes engaged—either with or without their knowledge—to train the people that will literally replace them. Since the Court must consider traditional notions of fair play and substantial justice when it determines whether to exercise jurisdiction in such a case, it finds that companies that are formed to take advantage of U.S. ingenuity by hiring U.S. workers to train their replacements in the global marketplace should expect to litigate cases arising from such contracts in U.S. courts, and it is fair

---

[8]Day traders exist all over the world. If AAFIS had wanted to, it could have used other traders. Presumably, Cariega chose S&D because of Cleary's unique ability to provide specialized training.

14

and just to require them to do so.[9]  To rule otherwise, this Court deeply believes, puts U.S. companies at a hopelessly disadvantaged position in a global economy.

Finally, AAFIS claims that this Court's exercise of jurisdiction is unfair and unreasonable because Chinese law may apply.  The Court finds it unlikely that Chinese law will apply, but, if it does, the Court is well-equipped to handle any difficulties involved with the application of foreign law.  This Court, with a huge admiralty docket, is often called upon to apply complex foreign law, and is properly equipped to do so.  Furthermore, merely positing that Chinese law *may* apply does not satisfy AAFIS's heavy burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477, 105 S. Ct. at 2184.

In sum, Texas has an interest in seeing this controversy resolved quickly, economically, and efficiently, and S&D has an interest in having the case resolved in its home district.  AAFIS's arguments that litigating in Texas places a burden on it and that Chinese law may apply are not compelling enough to render this Court's exercise of personal jurisdiction unreasonable.  Because this action arose out of a contract that created a substantial connection between AAFIS and Texas and the exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice, AAFIS's Motion to Dismiss for Lack of Personal Jurisdiction is respectfully **DENIED**.[10]

## II.  Improper Service

Under the Texas Civil Practices and Remedies Code, if a suit arises out of business a

---

[9]This statement is, of course, subject to satisfaction of the minimum contacts prong.

[10]S&D also argues that the Court may exercise general jurisdiction over AAFIS.  Since the Court has found that it may exercise specific jurisdiction, it finds it unnecessary to reach this argument.

nonresident does in Texas and the nonresident has not designated an agent, the Texas Secretary of State is an agent for service of process. *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.044(b) (Vernon 1997).  AAFIS alleges that this suit did not arise out of any of its activities within Texas, so the Secretary of State is not an agent for service of process.  As noted above, the Court finds that the claim asserted in this action arose out of an oral agreement and an actual course of dealing between AAFIS and a Texas company, so service was proper under § 17.044(b).  Thus, AAFIS's Motion to Dismiss for Improper Service of Process is also respectfully **DENIED**.

### III.  Venue

AAFIS claims that venue is improper in this District.  In a diversity case, venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2).  AAFIS claims that "almost none of the events giving rise to plaintiffs' claims occurred in this district." Def.'s Mot. to Dismiss for Lack of Personal Jurisdiction 12. However, as discussed above, S&D brought this claim against Defendants for breach of a contract and misappropriation of trade secrets.  S&D's obligations under the allegedly breached contract were to provide training to the Chinese day traders.  AAFIS admits that some of these day traders came to Houston for almost two months to be trained by S&D.  Since the Chinese day traders received training regarding S&D's trading methods in Houston, they likely learned at least some of the trade secrets that were allegedly misappropriated in Houston.  Thus, contrary to AAFIS's assertion, a substantial part of the events giving rise to this claim occurred in Texas.

Furthermore, AAFIS has not proposed an alternate U.S. forum.  Instead, AAFIS asserts that the case should properly be heard in China.  Thus, a *forum non conveniens* argument is more appropriate than an assertion of improper venue.  Accordingly, AAFIS's Motion to Dismiss for

16

Improper Venue is respectfully **DENIED**.

**IV.  *Forum non Conveniens***

AAFIS also filed a Motion to Dismiss for *Forum non Conveniens*.  The doctrine of *forum non conveniens* derives from the proposition that "[i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722, 116 S. Ct. 1712, 1724, 135 L. Ed. 2d 1 (1996).  Pursuant to this doctrine, a court may dismiss a case in favor of a foreign forum if the defendant establishes that the convenience of the parties and the Court, coupled with the interests of justice, indicate that the lawsuit is better suited for adjudication elsewhere.  *See Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001).

Federal courts employ a two-part analysis when applying the *forum non conveniens* doctrine. *See Piper Aircraft v. Reyno*, 454 U.S. 235, 255–56, 102 S. Ct. 252,265–66, 70 L. Ed. 2d 419 (1981). The first step involves a determination of whether an adequate and available foreign forum exists. *See Sydow v. Acheson & Co.*, 81 F. Supp. 2d 758, 768 (S. D. Tex. 2000).  Next, if an adequate alternative forum is available, the court must decide whether "certain private and public interest factors weigh in favor of dismissal." *McLennan v. Am. Eurocopter Corp.*, 245 F.3d 403, 424 (5th Cir. 2001).  If the relevant private interest factors advocate dismissal, however, no inquiry into the public interest factors is needed.  *See Baris v. Sulpicio Lines*, 932 F.2d 1540, 1550–51 (5th Cir. 1991). While undertaking both steps of this analysis, courts must remain mindful that "the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient." *Piper Aircraft*, 454 U.S. at 256, 102 S. Ct. at 266; *see also Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 827 (5th Cir. 1986).  The "*forum non conveniens* determination is committed to the sound discretion of the trial court." *Piper Aircraft*, 454 U.S. at 266 (citing *Gulf Oil Corp. v. Gilbert*, 330

U.S. 501, 511–12 (1947)).

*A. Adequate and Available Foreign Forum*

Generally, an alternative forum is available when the foreign court can assert jurisdiction over the litigation sought to be dismissed. *See Piper*, 454 U.S. at 254 n.22, 102 S. Ct. at 265 n.22 (citation omitted) ("Ordinarily, [the requirement] will be satisfied when the defendant is amenable to process in the other jurisdiction."). AAFIS states that it is willing to accept service of process from a court in China and will consent to the jurisdiction of said Chinese court. S&D has given the Court no indication that Chinese courts will not exercise jurisdiction in such cases, so the Court will consider China to be an available forum.

The alternative forum is adequate as long as the parties will be treated fairly and will not be deprived of all remedies there. *See Sydow*, 81 F. Supp. 2d at 768; *see also Piper*, 454 U.S. at 254 n.22, 102 S. Ct. at 265 n.22. AAFIS presents a Declaration from a Chinese law expert that explains that Chinese law recognizes claims for both breach of contract, including oral contracts, and misappropriation of trade secrets. S&D does not dispute that Chinese law recognizes these claims. Instead, S&D asserts that, if China has a legal doctrine that is similar to the U.S. *forum non conveniens* doctrine, that the instant case would be dismissed on that basis. The flaw in S&D's argument is that a Party has to move for dismissal based on *forum non conveniens*. AAFIS has agreed to submit to Chinese jurisdiction, so such a Motion would never be before the Chinese court. S&D has not presented the Court with any expert testimony indicating that Chinese courts may *sua sponte* dismiss a case based on such a theory. Therefore, S&D has not shown that China is an inadequate forum.

Because AAFIS has presented the Court with an affidavit from an expert that indicates that

China is an adequate and available forum and S&D has not sufficiently rebutted this affidavit, the first prong of the *forum non conveniens* test is satisfied, and the Court must analyze whether the private and public interest factors favor dismissal.

### B. Private Interest Factors

The public and private factors must "clearly point" toward trial in an alternative forum being preferable to overcome the "strong presumption" in favor of the plaintiff's choice of forum. *Piper*, 454 U.S. at 255, 102 S. Ct. at 265–66. The private factors to be considered in a *forum non conveniens* analysis relate to the convenience of the parties and include: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of viewing the premises, if such viewing would be appropriate to the action; other practical problems that make a trial of a case easy, expeditious, and inexpensive; enforceability of judgment; and whether the plaintiff has sought to vex, harass, or oppress the defendant. *See Karim,* 265 F.3d at 268 n.14 (citations omitted).

AAFIS claims that access to sources of proof will be more difficult if the trial is held in the United States because the trading records for all the ASY day traders are in China. According to AAFIS, these records are necessary for the trade secret claims because the records of traders trained by S&D will need to be compared with the records of those that were not. AAFIS also notes that these documents are mostly in Chinese and will need to be translated if the case remains in this Court. The Court understands AAFIS's concerns regarding the significant amount of documents (or at least electronic information) located in China that may be necessary for the proper resolution of the trade secrets claims. However, the lawsuit also involves a breach of an oral contract between U.S. entities, and any documents relevant to the work and training performed in the U.S. are likely in English and

19

located in the United States.   While the Court is confident that there are documents and/or information located in both China and the United States, some of which are in Chinese and some of which are in English, it cannot at this stage make a determination regarding which documents are more voluminous and which documents are more important to the outcome of this case.   Thus, though AAFIS has convinced the Court that there are some documents and/or information in China that may be relevant to this case, it has not shown that this factor impacts the overall convenience of one forum over the other.

AAFIS next complains that the Chinese day traders are located beyond the reach of compulsory process, and, even if the Chinese day traders were willing to appear voluntarily, transporting and housing the witnesses would be expensive and inconvenient.   According to AAFIS, *each* Chinese day trader is a necessary witness to refute S&D's misappropriation of trade secrets claim.   While the Court cannot compel the testimony of the Chinese day traders and AAFIS is theoretically unable to compel them since they are technically employed by ASY, the Court does not anticipate that AAFIS will be unable to secure their testimony—particularly given Helen Shih's premier role in both companies.[11]

AAFIS's concern about the cost and inconvenience of transporting Chinese witnesses to the United States would certainly be well-founded if all of the Chinese day traders were required to travel here to testify.   However, not all of the Chinese witnesses will be required to travel to Houston because the Court liberally construes Federal Rule of Civil Procedure 32 to allow depositions

---

[11]If AAFIS encounters difficulty in obtaining testimony that it believes is essential to its case, AAFIS should inform the Court in due course, as discovery proceeds.   The Court will be willing to revisit its ruling if facts immediately available indicate that AAFIS will be prejudiced without this testimony.

wherever convenient and, as noted above, "vigorously exercises its authority under Fed. R. Evid. 403 and 611(a) to ensure that each witness' testimony is as concise as possible and that cumulative and redundant testimony is kept to a minimum." *Continental Airlines*, 805 F. Supp. at 1397; *Dupre*, 810 F. Supp. at 827.  Furthermore, if the trial were held in China, both Parties would be required to bear the costs of transporting the U.S. witnesses to China, and since half of the claims involve the breach of a contract between two U.S. companies, there are likely to be several U.S. witnesses (including the Parties).  Unfortunately, the high costs of international travel will be incurred regardless of the location of the trial.  Consequently, the costs and inconvenience of transporting and housing these witnesses does not significantly impact the *forum non conveniens* analysis.

AAFIS does not present the Court with any other relevant private factors.  As discussed above, none of the factors listed clearly point to China.  Thus, the Court must discuss whether the public factors AAFIS urges the Court to consider bear enough weight in conjunction with the private interest factors heretofore discussed to overcome the strong presumption in favor of S&D's choice of forum.

C.  *Public Interest Factors*

The "public interest" factors include: administrative difficulties; reasonableness of imposing jury duty on the people of the community; holding the trial in the view of those affected; and the local interest in having localized controversies decided at home.  *See Karim,* 265 F.3d at 268 n.14.  AAFIS claims that administrative difficulties will arise if this case is not dismissed because trying this case in the United States will require extensive use of translators and the translation of numerous documents.  AAFIS asserts that these administrative difficulties would be overcome if the trial were held in China. The Court disagrees.  In any international case in which Parties or important witnesses hail from distant shores, language barriers are going to be an issue—regardless of which shore is

ultimately chosen as the location for the trial.  This issue is not new to U.S. courts, which face an

increasingly diverse array of litigants as the global economy expands.  While the Court understands

AAFIS's concern regarding translation of documents and testimony, it emphasizes that (1) the Court

is sufficiently equipped, prepared, and experienced to meet any difficulties the language barrier may

present;[12] and (2) if the case were heard in China, the Chinese court would face the same issue

regarding English documents and testimony.

The other public interest factors, which include local interest, Chinese interest, and fairness

of jury duty, do not favor dismissal.  There is a strong local interest in this matter because it involves

a local corporation and a contract that was partially performed in the Southern District of Texas.[13]

Certainly, citizens of China would likewise be interested in this controversy, but said interest does

not outweigh local interest.  Furthermore, because there is significant local interest, requesting the

---

[12]The Court suspects that the same can be said of the excellent counsel on both sides.

[13]Furthermore, the current nationwide concern about China's lackadaisical enforcement of intellectual property rights heightens local interest in cases in which international corporations are accused of wrongfully using and profiting from U.S. intellectual property. *See, e.g.*, Office of the U.S. Trade Representative, 2007 Special 301 Report 18–22 (citing "[i]nadequate [intellectual property rights] enforcement [as] a key factor contributing" to the continuing problem of intellectual property piracy in China); *available at* http://ustr.gov/Trade_Sectors/Intellectual_ Property/Section_Index.html; Robert C. Bird, *Defending Intellectual Property Rights in the BRIC Economies*, 43 Am. Bus. L.J. 317, 362 (2006) (concluding that "piracy in [China] remains widespread"); *Today in Business: Keeping an Eye on China*, N.Y. Times, June 24, 2006, at C2 ("China has been cited by the administration as a chief source of intellectual property piracy that costs American businesses billions of dollars in losses every year."); *see also* Peter K. Yu, *From Pirates to Partners (Episode II): Protecting Intellectual Property in Post-WTO China* 55 Am. U.L. Rev. 901, 975–81 (acknowledging that "enforcement . . . has been a major stumbling block to effective protection of intellectual property rights in China," but highlighting the "progress China has made in the intellectual property arena").

22

citizens of this District to help resolve this dispute by sitting on a jury is not unfair.[14]

In sum, neither the private nor public interest factors, taken *in toto*, favor dismissal.  AAFIS has not shown that it would be more convenient to have this case heard in China.  Therefore, AAFIS's Motion to Dismiss for *Forum non Conveniens* is respectfully **DENIED**.

### V.  Conclusions

For the reasons stated above, AAFIS's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Improper Venue is **DENIED**.  AAFIS's Motion to Dismiss for *Forum non Conveniens* is likewise **DENIED**.  Each Party is to bear its own taxable costs, expenses, and attorneys' fees incurred herein to date.

---

[14]AAFIS makes much of the fact that the oral agreement was allegedly reached in Spring and that the training and meetings allegedly occurred in Houston or Spring.  It claims, thus, that while this case has ties to the Houston Division, there are no ties to the Galveston Division. AAFIS is not requesting a transfer to the Houston Division, though, so the Court considers any ties with *Texas* to be relevant to the *forum non conveniens* analysis.  Furthermore, unlike many metropolitan areas, the Houston Metropolitan Area is geographically enormous.  The Houston Metropolitan Area, which *encompasses* Galveston County, has a total area of 10,062 square miles, which is slightly smaller than Massachusetts and slightly larger than New Jersey. *See* City of Houston: The Official Site for Houston, Houston Facts and Figures, *at* http://www.houstontx.gov/abouthouston/houstonfacts.html (last visited May 30, 2007); *see also* U.S. Census Bureau, Metropolitan Statistical Areas and Components (Dec. 2005), *at* http://www.census.gov/population/estimates/metro_general/List4.txt (listing the counties included in the Houston-Sugar Land-Baytown, TX Metropolitan Statistical Area, which includes Galveston County).  Thus, while the center of downtown Houston is approximately fifty miles from the center of downtown Galveston, Texas counsel, witnesses, parties, and even jurors are used to traveling rather long distances to get around, and the Court does not deem activities that occurred in Houston or Spring to be far away at all.  In fact, one member of the Court's staff travels from Humble, which is seventy miles away, every day.  Such a commute is not unusual in this vast metropolitan area. *See Smith v. Colonial Penn Ins. Co.*, 943 F. Supp. 782, 784 (S.D. Tex. 1996) ("The Court certainly does not wish to encumber any litigant with . . . an onerous burden. . . . [However,] in this vast state of Texas, such a travel distance would not be viewed with any surprise or consternation.  Defendant should be assured that it is not embarking on a three-week-long trip via covered wagons when it travels to Galveston.  Rather, Defendant will be pleased to discover that the highway is paved and lighted all the way to Galveston.").

**IT IS SO ORDERED**.

**DONE** this 13th day of June, 2007, at Galveston, Texas.


_____
Samuel B. Kent
United States District Judge